CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 30 2007

JOHN F. CORCORAN, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA, ) | |
| ) | Case No. 7:06-MJ-713 |
| v. ) | |
| ) | |
| JONATHAN SCOTT, ) | |
| Defendant. ) | |
| ) By: | Hon. Michael F. Urbanski |
| ) | United States Magistrate Judge |
| ) | |

## MEMORANDUM OPINION

This matter is before the court upon defendant Jonathan Scott's ("Scott") motion to suppress all evidence seized from Scott's person during a search conducted on December 16, 2006, following a lawful traffic stop. Scott claims that the pat down search of his person violated his Fourth Amendment rights. The United States claims that the search was reasonable under the circumstances, and, in the alternative, that the evidence inevitably would have been discovered by a lawful search and, thus, should not be suppressed.

I.

Law enforcement officers employed by the National Park Service conducted a DUI checkpoint near milepost 107 on the Blue Ridge Parkway on December 16, 2006. At approximately 9:30 p.m., a Chevrolet Blazer entered the checkpoint. Upon contacting the driver of the vehicle, Ranger Katie Pitzenberger smelled a strong odor of alcohol and observed that the driver's eyes were bloodshot. Ranger Pitzenberger directed the vehicle to a large unlit parking lot for further investigation. Upon questioning the driver, Chris Martin ("Martin"), Ranger Pitzenberger also observed that his speech was slurred. Martin admitted that he had consumed

three to four beers, and Ranger Pitzenberger asked him to exit the vehicle to undergo field sobriety tests at a distance removed from the vehicle.

While Ranger Pitzenberger was conducting field sobriety tests on Martin, Ranger S. K. Buxton, the cover officer, observed Scott, a passenger, sitting silently in the front seat of the vehicle. Ranger Buxton testified that it was dark, and Scott was quiet. As a result, Ranger Buxton asked Scott to step out of the car for officer safety concerns. Scott exited the vehicle in response to Ranger Buxton's request. Ranger Buxton testified that Scott was wearing baggy camouflage pants and some kind of shirt and jacket. At this point, neither of the officers had observed any contraband, weapons, or other suspicious items in the vehicle. Further, before conducting the pat down, Ranger Buxton observed no suspicious actions on Scott's part and saw no bulges in Scott's clothing. Nevertheless, based entirely on two factors, first, that it was dark in the parking lot area, and, second, that Scott was quiet, Ranger Buxton executed a pat down search of Scott's person. Ranger Buxton testified that he decided to do so for his safety and out of concern for the "unknown," namely that Scott could have had a knife or gun. Although Ranger Buxton did not find any weapons during the search, when he patted down Scott's outer clothing, he felt a sandy substance in his left pants' pocket, and thereafter, a small bag containing a white substance fell from a hole in the bottom of the pocket and into Ranger Buxton's hand. Upon questioning, Scott admitted the substance was cocaine.

Ranger Buxton then walked over to Ranger Pitzenberger, who was still conducting field sobriety tests on Martin, and advised her that he had found a bag of suspected cocaine in Scott's pocket and of Scott's admission. Faced with these facts, Ranger Pitzenberger asked Martin to consent to a search of his vehicle, and he agreed to the search. During the search, Ranger Buxton

2

found a marijuana pipe in the driver's side door, a marijuana roach in the ashtray in the front compartment area, and an open, empty beer can under the passenger seat.

## II.

During the course of a lawful, routine traffic stop, an officer does not violate the proscriptions of the Fourth Amendment by ordering the driver and/or the passengers of the vehicle to step out of the vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 n. 6 (1977) (holding that police officers may require a driver to exit his vehicle after being lawfully stopped); Maryland v. Wilson, 519 U.S. 408, 415 (1997) (extending the Mimms decision to include passengers in vehicles that have been lawfully stopped). This additional intrusion on a person's liberty is outweighed by the inordinate risks confronting a police officer as he approaches a person seated in an automobile. Mimms, 434 U.S. at 110-11. However, the officer may not initiate a pat down search of the driver and/or the passengers once they exit the vehicle absent "an articulable and objectively reasonable belief that the suspect is potentially dangerous." Michigan v. Long, 463 U.S. 1032, 1051 (1983); Terry v. Ohio, 392 U.S. 1, 27 (1968). "Terry and Long require a specific, articulable suspicion of danger before police officers are entitled to conduct a 'pat-down.'" United States v. Sakyi, 160 F.3d 164, 168 (4th Cir. 1998). In Sakyi, the Fourth Circuit, relying on the close association between drugs and guns, held "that in connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." 160 F.3d at 169.

3

The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting the police officer, including all information available to the officer and any reasonable inferences to be drawn from those circumstances. United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989). And, although the quantum of suspicion necessary for such a search is less demanding than that for probable cause, an officer must be able to articulate those specific facts which, prior to the search, lead the officer to believe that the suspect was armed and dangerous and/or that there were illegal drugs in the vehicle. United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 27); Sakyi, 160 F.3d at 170. Further, "[t]he articulated factors together must serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied." United States v. Brugal, 209 F.3d 353, 359 (4th Cir. 2000).

Rangers Buxton's request for Scott to exit the vehicle following the lawful traffic stop was constitutional.[1] However, there was no basis for the pat down search which was executed after Scott exited the vehicle. Ranger Buxton did not testify that he had any reason to believe that Scott was armed and dangerous before conducting the pat down search. For instance, Ranger Buxton did not testify he saw any weapons in the car, that Scott exited the vehicle in an odd or awkward manner indicating he might be concealing a weapon, that there were any bulges in Scott's clothing, or that Scott made gestures which Ranger Buxton interpreted as threatening. Likewise, Ranger Buxton did not testify that he had any reason to believe there were narcotics in the car. Neither Ranger Buxton nor Ranger Pitzenberger testified that they saw any drugs or drug

---

[1] As Scott does not contest the lawfulness of the initial traffic stop, for purposes of this motion the court assumes the stop was routine and lawful.

4

paraphernalia or that either the driver or Scott admitting to having or using any narcotics prior to the pat down search.[2] Likewise, neither testified that the stop occurred in a high crime area, an area known for drug activity, or that they recognized either the driver or Scott as drug users or dealers. Ranger Buxton's only articulated basis for the pat down search of Scott was that: (1) it was dark outside and (2) Scott was quiet. Such a basis is insufficient to justify a pat down search. See United States v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998) (finding that an officer had a reasonable and articulable suspicion to pat down a passenger in a vehicle, after the passenger exited the vehicle awkwardly while clutching his stomach, indicating that the passenger may have been concealing a weapon); United States v. Marion, 149 F.3d 271, 274 (4th Cir. 1998) (holding that an officer investigating a crime that had just occurred, coupled with defendants acting nervously and in a threatening manner, justified a Terry stop and frisk to ensure the safety of the officer); Sakyi, 160 F. 3d at 169-70 (finding that an officer's observation of cigar boxes in reach of the driver and passenger and which the officer knew to be frequently associated with marijuana, in combination with the facts that the driver could not present identification and lied about the status of his driver's license and the stop occurred in a high crime area known for violations involving drugs and guns, justified the pat down search of the driver and passenger of the vehicle); United States v. Baker, 78 F.3d 135, 137 (4th Cir. 1996) (stating that a triangular bulge at the waistband of a driver's pants was sufficient to lead the officer to conclude that the driver may be armed and dangerous); United States v. General, 435 F.Supp.2d 502, 510 (E.D. NC May 1, 2006) (stating that a police officer had reasonable

---

[2]Ranger Pitzenberger testified that the driver admitted to doing three or four lines of cocaine, but such admission was not made until after Ranger Buxton's search.

suspicion justifying a pat down search because the initial confrontation occurred in front of a house known for complaints about drug trafficking, in a high crime area at 5:30 in the morning, and defendant moved in a manner which the officer interpreted to mean that he might have a weapon); United States v. Turnage, 7:05cr00018, 2005 WL 894892, at * 2 (W.D. Va. April 15, 2005) (holding that an officer had reasonable suspicion to pat down the defendant during a stop because the defendant appeared to be highly nervous, immediately prior to contact with the police he was witnessed attempting to secret items under the seat of the vehicle, and he was in a high crime area known for a substantial amount of drug activity).

Ranger Buxton has not articulated any facts which the court can find lead to a reasonable suspicion that Scott was armed and dangerous or that the car contained narcotics, before he executed the search. Darkness alone is not sufficient to justify a pat down search. Additionally, the court can conceive of many reasons why a passenger may remain quiet during a lawful traffic stop which are not indicative of criminal activity. See Florida v. Bostick, 501 U.S. 429, 437 (1991) (stating any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."); see also United States v. Burton, 228 F.3d 524, 528-29 (4th Cir. 2000) (finding that remaining silent, refusing to answer questions, or refusing to comply with an officer's order, alone, are insufficient to justify a pat down search). The factors on which Ranger Buxton based his search, that it was dark and Scott was quiet, are insufficient to separate a lawfully abiding citizen from a suspected dangerous criminal and, thus, do not justify the pat down search of Scott after he exited the vehicle. Therefore, because the search was illegal, the evidence gathered during that search, namely the cocaine, must be suppressed unless an exception to the exclusionary rule applies. See Taylor v. Alabama, 457

6

U.S. 687, 694 (1982) (finding evidence gathered as the fruit of an unreasonable search or seizure is generally inadmissible against a defendant); Wong Sun v. United States, 371 U.S. 471, 487-88 (1963) (stating evidence obtained from a traffic stop in violation of the Fourth Amendment would be inadmissible as "fruit of the poisonous tree.")

### III.

The United States contends that even if the pat down search of Scott was illegal, the cocaine should not be suppressed because it would inevitably have been discovered following a lawful search of the vehicle. Specifically, the government contends that because the driver of the vehicle was intoxicated and was arrested, subsequent to his arrest the Rangers could have conducted a lawful search of the vehicle. The government further contends that this search would have yielded the marijuana pipe, the marijuana cigarette, and the open beer can, in close enough proximity to the passenger to have justified frisking the passenger of the vehicle.

Where the government has established by a preponderance of evidence that the evidence at issue would "ultimately or inevitably" have "been discovered by means wholly independent of any constitutional violation," the inevitable discovery exception to the exclusionary rule allows the prosecution to admit evidence obtained through an illegal search. Nix v. Williams, 467 U.S. 431, 443 (1984). However, the fact that makes the discovery inevitable must "arise from circumstances other than those disclosed by the illegal search itself." United States v. Thomas, 955 F.2d 207, 211 (4th Cir. 1992) (deciding not to apply the inevitable discovery doctrine where only the illegal search itself led to the discovery of the stolen bank money).

There was no evidence presented on the issue of inevitable discovery during the hearing. In fact, the exception to the exclusionary rule was raised sua sponte by the court after counsel

7

made closing arguments on the motion to suppress. Further, at that time, the court and counsel noted that should the court find that Ranger Buxton's initial search was unlawful, the court would need to hear additional evidence on the issue of whether the search of the vehicle would have been completed subsequent to the arrest of the driver and, thus, would have yielded evidence justifying the search of the passenger. As the government bears the burden of proof of inevitable discovery, but no such evidence was heard during the hearing, the court finds that justice requires the government be afforded the opportunity to present evidence on this issue.

### IV.

Based on the foregoing, Scott's motion to suppress on the basis of Ranger Buxton's initial search is hereby granted. However, the court finds it necessary to hear additional evidence on the issue of inevitable discovery before excluding this evidence in its entirety. Therefore, this matter shall be set down for an evidentiary hearing on the motion to suppress as to inevitable discovery and for trial.

The Clerk is directed to send certified copies of this Memorandum Opinion and accompanying Order to counsel of record.

Enter this 27th day of April, 2007.

Michael F. Urbanski
United States Magistrate Judge

8